All right now, first case, Callahan v. County of Suffolk. Morning, Your Honors. May it please the court, my name is Donna Aldea and I represent the Callahans in this matter. Your Honors, the jury instruction that was given in this case clearly violated this court's precedent in Rassanen v. Doe. That case stated, quote, the jury must be instructed consistent with Garner and Obert that the use of force highly likely to have deadly effects is unreasonable unless the officer had probable cause to believe the suspect posed a significant threat of death or serious physical injury to the officer or others. Okay, so in this case, Judge Wexler instructed the jury that a police officer may use deadly force against a person if a police officer has probable cause to believe that the person poses a significant threat of death or serious physical injury to the officer or others. Explain to me how that charge is inconsistent with Rassanen. The difference is that in the charge mandated by Rassanen, the instruction is a restrictive instruction and an exclusive instruction. In other words, the restriction says that you cannot use deadly physical force unless. In this case, the charge that was given here, it was a permissive instruction. So what the court allowed the jury to do here is it allowed the jury to find that deadly physical force is permitted if there's probable cause to believe, as Your Honor stated, but it may also be permitted in other circumstances if you look at the totality of the circumstances. You argue that, but, you know, I don't know if in context the charge will support that. And moreover, I'm not sure it would support it in light of the context of the entire trial, no one argued or suggested any other justification for the use of excessive force here than the presence of probable cause. And then there was all kinds of arguments over whether there was probable cause. So your suggestion that the permissive may invited the jury to think about bases other than probable cause doesn't seem to have any support in this record. Am I missing something? Well, Your Honor, I think it does, because I think just like in Rassanen, and actually even more so than in that case, in Rassanen the situation was that you had a police officer who fired at a suspect who was unarmed, but the testimony was that the police officer said that the suspect actually grabbed his gun, the plaintiff grabbed his gun, and the officer testified he felt it turning towards him. So there, I think, when this Court said it was a closer call, it really was. Here, there was no testimony by the officer that he actually saw a weapon, that he actually even saw the person behind the door. There was no testimony in this case that anybody grabbed his gun. That's a sufficiency challenge. Well, it's... That's a sufficiency challenge. That's not a challenge to the adequacy of the charge. It's still all an argument about probable cause. Right, but it goes to the heart of the charge, because what the jury could have done as a practical matter is it could have said, okay, we find that there was no probable cause to believe, and there's reason to think that they might have found that on this record, but nonetheless it was reasonable. Didn't Wilson say he saw some type of object? He said that he thought he saw some type of object. He couldn't say what it was. He couldn't say that it was a weapon, and that in terms of the impact this would have had on the verdict, which is the harmless error standard, in terms of the impact there was no item that was found next to the body. So that actually didn't make a lot of sense and didn't have a lot of corroboration in the evidence. But did he say he saw a hand thrusting towards him with an object? He did testify to that, that he thought there might be an object. When he was pressed on whether he saw what that object was, he said no. So under those circumstances, again, with respect to the jury charge, not to the sufficiency. We don't raise a sufficiency argument. But in terms of the harm, to answer Judge Raji's question, this really is a situation that is not nearly as close as it was in Rasanen because there was a very real probability. I would say probability. All that I need to show is a possibility. But there was a very real probability here that the jury found clearly there was no actual threat. There was no, and that was conceded, that there was no actual threat here. Clearly in this case the jury had reason to believe that there was not probable cause under the circumstances when it viewed all the evidence. But under the charges given, it could have still found that the totality of the circumstances to the officer rendered his actions reasonable. And that is what the Supreme Court foreclosed in Gardner, and that is what this Court expressly foreclosed in Rasanen. So this is not an equivalent charge. The 911 calls saying there was a gun. Actually, the 911 calls really went against the credibility of the police officer in this case. The mother had heard someone in the background mention a gun, right? Correct. Was that related to this police officer defendant? The police officer defendant did hear that. He testified to that. However, he also testified that he knew that the mother was not or that he heard the transmission that the mother was not in the house. And if you look at the 911 calls in the record, actually those calls came in saying this guy likes to make up stories. We're not really sure if we should even be calling 911. It's probably just a cry for help. And the officers testified that they knew when they came to the scene that he was not a dangerous person. And really, again, in this case we're not challenging the sufficiency, but the impact of the court's charge really was clear, clearer than in Rasanen. I don't understand how this charge impermissibly permits the jury to find in the police officer's favor unless the jury finds that the officer had probable cause to believe that your client was a threat, a significant threat. Because the charge says the police officer may use deadly force under these circumstances, under probable cause, but then never says that's the only circumstance you can do that. And that is precisely the error in Rasanen that is the subject of all of the court's discussion. There was no charge given on probable cause in Rasanen. And here the concern you have is that the charge is given, but it's given in the permissive, which you say allowed other reasonable circumstances to be identified by the jury, whereas Rasanen said that they had to be told that it was the only, only one. Correct, Your Honor. That the charges, the omission from the charge in Rasanen is much greater than here. Well, but not on the material issue. So the analysis in Rasanen— But they're charged about probable cause in Rasanen. They were not. Right. There was no charge on probable cause. That was the error. Well, actually, in the court's reasoning, the court in Rasanen really talks about this permissive versus the restrictive charge. It actually expresses— I agree to say the Rasanen court ruled on the inability of a permissive charge because I didn't think that issue was before the court at all in Rasanen. The Rasanen court, the quote was, the jury must be instructed— May I just ask you where you are in Rasanen? Sure. This is on page 224. I don't think so. The Rasanen is 723F, third— I'm sorry. It's got to be three—hmm. Let me find it. Let me find it in a different place. All right. Why don't you just tell it to us. We'll find it. Okay. So the quote is that the jury must be instructed, consistent with Garner and Obert, that the use of force highly likely to have deadly effects is unreasonable unless the officer had probable cause. And the key there being the unreasonable unless, which is precisely what was admitted there. Then later on— I'm trying to think of cases that say our opinions don't dictate the language of charges. The point has to be made. Except that, Your Honor, in Rasanen, while I would generally agree with that, in Rasanen, the Court at least five times said that this charge is required, that the jury must be instructed of this. This wasn't permissive language. So when the defendants say that Rasanen made a suggestion that this is the charge that should be given, that's contrary to the language of this Court in that case, that at least five times says this charge must be given and this charge is required. Let me ask you this. I read the summations and in the opening summations by Mr. Barkat, he does use the Rasanen language though, right? Correct. Does that make any difference? No, Your Honor. And actually I'll point to Rasanen again for that matter. First of all, as a general legal proposition, the parties' arguments in opening and summation are arguments. The law is provided by the Court and that's what the jury has to follow. So there's a difference in that standpoint. Did the district court say that though? I read the district court's charge and I didn't see that language. But I might have missed it where he says to the extent that lawyers tell you something different on the law, don't listen to them, listen to me. I didn't see it. Did you recall whether he did that? I don't recall, Your Honor. I can look it up and when I get up on rebuttal, I can try to address that and see. I don't recall that. But to go back to Rasanen, I would also say that one of the things that came up in Rasanen was the, with respect to Judge Raji's question about where Rasanen talked about the restrictive as opposed to the permissive, in point three, right before the conclusion, so I'm looking at page, let's see if I can find the page here, 337 it looks like. The court talks about the fact that there were manual provisions that were put in that highlighted different standards and that highlighted the reasonable belief to defend yourself or another person from the imminent use of force. And the court says even if the manual provisions had reproduced the Garner-Obert rule verbatim, the court's statement that those provisions merely apply to the case at hand does not substitute for an instruction that the Garner-Obert rule is binding as a matter of constitutional law. And then the court says in the case before us, a juror may well find on the basis of the manual provisions that Brown's conduct departed from protocol, but the juror need not find as a necessary corollary that Brown's conduct violated the plaintiff's constitutional rights. So it was actually central to the court's decision in Rasanen that part of the reason that the charge that was given was not tantamount or the functional equivalent to the charge that was required is precisely because of this shift, this use. It didn't hinge on probable cause. It hinged on the necessary if language versus the required unnecessary or unreasonable unless. And that is not just a semantical decision, according to this court in Rasanen. I know my time is up. I just want to be brief. I don't want to be unfair to my adversary. I'd like to very briefly address, so he can respond to it, the second point before the court. All right. Counsel can use your two minutes now. Go ahead. Thank you. With respect to the evidentiary issues regarding the preclusion of testimony from the plaintiff's expert and the preclusion of testimony relating to the officer's prior use of force by shooting at dogs, one of the errors, and I just wanted to clarify this, that the defendant makes, is the defendant says that the reason the protocol should not have come in, and the court found, the reason the protocols were not relevant was because they only relate to the Monell claim. They only relate to whether protocols were followed and, therefore, whether there was a failure to train. And that misses the point. The reason that the protocols were relevant is because, in fact, those protocols showed that Wilson was unlikely to have actually acted the way he testified he did. In other words, they cast doubt on the credibility and veracity of his testimony. Specifically, if you look at the record at page A156 to 157, where the protocols are listed, in paragraph 14 there, the expert said that Wilson stated he actually thought there was a man with a gun on the scene. But the expert would have said, if he really thought such a threat existed, proper protocol would have required calling a supervisor, requesting additional units, requesting ESU, requesting EMS and EMT. The failure to do those things doesn't just mean protocol wasn't followed. It allows the jury to find that, objectively, from a credibility standpoint, his testimony that he believed there was a man with a gun at the scene was just not true. But it was preceded by if properly trained. Correct, Your Honor. But, again, that's a credibility question for the jury. So the question of whether it was a failure of training or a failure to follow protocol, or whether it was that his story was just not true, should have been left to the jury to decide. Why isn't that a proper subject for cross-examination of the officer? Specifically, you took training, and were you trained that if X, you do Y. If Y, you do Z, whatever. And that's what the expert gives you is the basis for cross-examination, not a basis to put in that evidence without any foundation that the officer was, in fact, so trained. But there needs to be, well, in the motions in limine that were made, there were requests that were made, I think, in both ways, to allow the expert testimony to come in to establish the protocols and to allow their use in . . . But the question now is, does the officer have an objectively reasonable basis to think he has probable cause, right? At that point. And the protocols by themselves don't answer that question. The protocols become prevalent only once you establish that the officer knows of them and doesn't act consistently with them. Well, to the extent that the jury was told to evaluate reasonableness, the reasonableness of the officer's conduct based on totality, based on all of the facts and circumstances before them . . . You're suggesting you lacked, that you didn't lay the foundation of the fact that would have made the expert saying, yes, indeed, that's the protocol. Because this was decided in the motion in limine, I guess there was never an opportunity for the foundation to be laid because the court precluded it from the outset. The court didn't preclude you from asking the officer whether or not he had been trained to do these things that you say he should have done. Right. The court precluded the expert testimony as to what the protocols actually were. No. So . . . It seems to me that if you'd gotten the officer to say he'd been trained, you wouldn't have needed the expert at all. Perhaps that's true. I guess the question was never asked. With respect to the gunshots . . . I used your two minutes. I'm sorry, Your Honor. Very quickly on the gunshots. Okay. With respect to the preclusion of testimony that the officer had previously discharged his gun, in that case, at two dogs, that, too, was relevant. And, actually, the defendants acknowledged . . . Relevant to what? It was relevant to his state of mind and to show that there were unusual characteristics with the actions that were alleged. But shooting a dog is not the same as shooting a human being. Well, actually, Your Honor, the defendants acknowledge that a pattern of conduct under 404B is admissible when those acts share unusual characteristics with the acts alleged. And, in this case, the statistics that we provide, and we also provide it to the lower court, actually show that . . . These are in page 9 and 10. You can find them in our brief. But these actually show that it is highly unusual for an officer to fire his gun in the line of duty at all. In 2012 . . . That's the whole point. You were offering this to show propensity, that he's trigger-happy. That would have been the argument. He shoots at dogs. He shoots at human beings. He shoots. We were offering it to show a pattern of relevant conduct or an aggravated state of mind, which . . . How does the shooting of the dog bear at all on a state of mind at the time of the shooting of the individual here? Because this officer, in the small 1 percent or less of police officers on the force, every time he's confronted, or at least on three instances, when he's confronted with a situation where he's under stress and perceives a threat, he fires. But it's . . . And he certainly didn't believe that the dogs carried guns. But it was a threat to himself, and this is the way that he acted. And so it shows the aggravated state of mind that this Court has found is okay. Additionally, it's also relevant separately because it shows, aside from the pattern, that he was actually . . . He testified that when he fired his gun, the sensation was such that he believed that his arm had been . . . His hand had been blown off. The issue is not whether it was relevant. The issue is whether Judge Wechsler abused his discretion in keeping it out. But if it's relevant to any purpose other than propensity under 404B, then the evidence should be included. It should be permitted in. And there were at least three . . . The erroneous entry decision does not automatically evidence abusive discretion where there can be a question about it. As I said, your whole argument about his state of mind is that his state of mind . . . He's got a propensity to be trigger happy. I mean, I think you're just trying to recast what you're not allowed to do, which is offer this kind of evidence for propensity in some way invoking state of mind. I was actually just . . . It's like, you know, he has a state of mind to rob banks because he robbed three before. Well, I was actually looking at a decision. So, I was quoting to prove relevant conduct or an aggravated state of mind, which was from a decision, Ismail v. Cohen, which was a Southern District decision that was ultimately affirmed. And also, this Court's decision in O'Neill v. Kraminski, which is cited in our brief. What are the facts that the state of mind there is . . . that it's state of mind, but not propensity? Well, again, the quote was aggravated state of mind. In other words, that it tended to show it's not a propensity to commit a bad act. It's just that when he's faced with a situation that would normally not cause another officer to fire . . . Thank you. . . . he has a tendency to do it. Thank you. Thank you. Mr. Mitchell. Obviously, addressing the initial issue before the Court, what I call the main issue, regarding the jury charge. It's the defendant's position that what is necessary is that the jury be given adequate legal guidance, so that they can reach a rational decision on the case's fundamental issue. And, Your Honor, I think you pointed out the fundamental issue is when viewing the facts in this case, is whether there was probable cause for the officer to believe that there was . . . he was facing a threat of death or serious physical injury. But, your adversary says that unless it's charged in the unless language, that there's a risk that the jury will think that something other than probable cause can support a reasonable basis. Yes. And, Judge, I think the issue in respect to that is, was the jury properly charged on the justification that's necessary, when deadly physical force is used? And, in contrast to Rosannon, and Your Honor pointed it out, in this particular case, the Court gave a specific instruction on the justification of when deadly physical force may be used. Where Rosannon . . . The source of that was your request to charge, right? I mean, your request to charge basically tracks what the District Court charged the jury on this. And, you cited the Tennessee v. Garner, but you didn't use the Obert or the Rosannon language. Why was that? Why didn't you submit a charge when Rosannon makes it so clear that this is what you're supposed to tell the jury? Judge, the charge that I submitted to the Court was a charge that I had put together during the trial. And, I agree with Your Honor that I didn't have the specific language. However, during the jury charge, and when it was discussed, and Judge Wexler brought it up, at that point . . . They submitted a proposed charge that tracked Rosannon. The Plaintiff's Counsel did, right? And, I saw their request to charge. They did, Judge. And, with that in mind, as Your Honor mentioned in summation, I do believe it's important to note that Mr. Barquette, during his summation, referenced the concept of probable cause. And, whether it be the Garner-Obert charge, it's on A576 and A58. It says it twice. Why was there a substantive reason why you said, we don't think that that Rosannon-Obert charge is right here, Your Honor? Because, they did propose it and there was a charge conference. And, he ruled against the Plaintiff and said, you can take it to the circuit if you don't agree with me. But, was there a reason why you thought this was the kind of case that the Obert charge shouldn't be given? No, Judge. When Judge Wexler indicated that he was going to give the charge, he did. I was aware that it was sufficient. It came to my awareness. Rosannon was a case that arose in Suffolk County. Yes, Judge, but . . . A county case.  I appreciate . . . But, it occurred in Suffolk County, so I assume the case was known to you. The standard in the case was known to me, Judge. And, your adversary asks for it. And, you decide that you would rather have an appellate issue than to say, yes, Judge, that is what the court said in Rosannon? No, Your Honor. Respectfully, when Judge Wexler instructed how he was going to charge the jury, I was satisfied that he did meet the standard that the Plaintiff was asking for that Rosannon said. I did not think that the Judge should not charge that. Notwithstanding my proposed jury charge, Your Honor, quite frankly, it was something that I had put together from an old charge. And, while we're trying our cases, we get to jury instructions. The issue came up. I had a conference with my office. Do you think this charge, the Callahan charge, satisfies Rasmussen? I do, Judge. Why? Because what I think it does is, in the manner that the jury was charged when compared to the evidence in the case, that it was adequate legal guidance to the jury. That it properly directed them on what the Plaintiff's burden should be. And, again, when viewed in totality of the light of the evidence in this case, which Judge Radji indicated, there's really no other way to look at what happened. This wasn't something where the facts were broad. It was an instantaneous action that happened in a doorway between the police officer and the deceased behind the door. That, when in light of the jury charge, compared to what the evidence showed, and compared to what Mr. Bark had argued on his summation as well as my summation, that the jury was adequately instructed, again, on this concept of what's the fundamental issue. So, I think that, yes, I do believe it was satisfactory. Beyond that, I believe even if there was the concept of it wasn't satisfactory, was it the equivalent, the functional equivalent? And I think that's quite clear. And Rassen in the court said it wasn't the functional equivalent because it was referred and went back to what would be the general reasonableness concept. That's when Judge Spatz plugged in deadly force. He essentially took the general reasonable force charge that we have in instances where there isn't deadly physical force used and just went along and plugged in deadly physical force. And in doing so, he kept the standard at that general reasonableness, objective reasonableness, where here we've got Judge Wexler intending to, aware, as the record indicates, Ms. Marion brought it up several times and he indicated he was aware of it, and intending to do that very thing of giving the jury a specific charge regarding the concept of probable cause, not just reasonableness, but probable cause. But then he went on to give a boilerplate about excessive force, right? Hindsight is 20-20 and under certain circumstances. In determining whether the police officer used excessive force, you may consider the need for application of force, relationship, the amount of force used, the threat reasonably perceived, effort made to temper the severity of a forceful response. That's boilerplate excessive force cases when there's a police beating kind of case, right?  So I agree with Your Honor. But not deadly force. But what you're doing there is you're instructing the jury when they are conducting the analysis of whether something is reasonable, or in this instance whether there's probable cause, those are factors they consider. That's not an instruction on what reasonableness is. That's not an instruction on what probable cause is.  You may consider that officers are often faced with tense situations where they have to act. Let me ask you a second. You can't use 20-25. In all these charges that even when they use probable cause, there's no further definition of that, right? In the charge, what does probable cause mean that I saw? In this case, Judge, no. The judge just only mentioned that it did not define probable cause. And I agree, Your Honor, usually there will be instructions on reasonableness and then on probable cause. That was not here. But I don't think it misled the jury because I think the instruction to the jury, as I mentioned in my brief, as you go down, and Judge Wexler is- The judge does charge that the officer is entitled to use reasonable force, and that's not entitled to use any force beyond what is necessary to accomplish a lawful purpose. So it's not as if he said nothing, but he didn't define probable cause. No, and I agree. No, that wasn't sought, right? No, it wasn't requested. Not by you, by the defendant that wasn't sought. Correct. The concern is that the probable cause wasn't charged in the unless language of Rastani. Yes, Judge. But the phrase probable cause and the actual what I call Garner-Roberts standard was directly given to the jury in a specific fashion. And I mentioned that one point in my brief about how- You say that it wasn't a request to charge on probable cause? I thought there was. Probable cause in this context means that a reasonably prudent police officer would have done under similar circumstances, in light of the facts and situation, et cetera. That means that evil intentions will not be excessive force or deadly excessive force. There was something about probable cause, right? Judge, forgive me. I was focusing only on that brief portion where the judge, in about a paragraph, says he goes from that a person may not be subjected to unreasonable force, and then he gets more specific and says officers may use reasonable force. That's what I was referring to in that sort of four or five bullet point ways that the judge narrowed the jury from the broad to the narrow. And then ultimately ending with that an officer may use deadly physical force, if the officer has probable cause to believe he's facing death or serious physical injury. And judges, if I may, your honor mentioned the 911 call. Factually, the jury did not hear about the 911 call. It's a person calls 911. They get dispatched to the officer by a different process, and the officer hears a dispatch. In this case, the officer heard a dispatch regarding a gun in the house. And I disagree with counsel. Officer Wilson had a belief that the mother may be in the home and that there may be a gun there. And as far as actual threat, there was a belief that there was a gun in the house and when he's engaged by this person behind the door, that not only Officer Wilson was left handed and he had his gun in the door in a manner that he couldn't control it. Not only could the deceased get his own gun, there was a fear that the person behind the door was armed as well and could have shot the officer through the door. So there really was an actual threat in the facts of the case. And if I may just briefly address the two points, the two remaining points. And the first one is that the expert that they want to call, his testimony would have gone to procedure. It's the officer's, was it objectively reasonable at the time that the officer acted, when this immediately occurred, whether he was trained properly and followed his training flawlessly or whether he didn't follow the training at all. And I agree with Your Honor that if they wanted to explore a cross examination of him, they could have done that. Lastly, on the issue of the shooting of the dogs, it's pure propensity. Your Honor is absolutely right about that. They just want to say he's trigger happy. There's been trying to make shooting a dog sort of fit in with shooting a human. Yes. Was there a 403 ruling on that? In other words, did the court say, even if it were relevant, I'm excluding it because it's substantially outweighed by the danger of unfair prejudice or misleading the jury, those kinds of things? Your Honor, that's the last point, is that the record isn't preserved on the actual court's ruling on that. The earlier ruling that the court made was then, it was a mistrial, so those rulings didn't affect. And then it came a time that the court denied all the motions, all of our motions, without prejudice to renew. The motions renewed. There was a discussion in chambers regarding the motions. I just don't have an independent recollection of what the court did. I don't know. But I also know it's not on the record and it's a position that it wasn't preserved. Thank you. Thank you. Thank you. Ms. Aldi, we gave you extra time, but if there's anything you'd like to quickly rebut, we'll hear you quickly. Just on the preservation point, that last point, in fact, it actually was preserved because the motions in limine that were made at the beginning of the first trial were decided in chambers and the transcript was provided to the court subsequently in a supplemental appendix. So that is the ruling that preserves the issue. And it's well settled that when there's a motion, yeah, it doesn't need to be raised again. Thank you. Thank you to both sides very much. I understand you had a little trouble getting here this morning. Thank you. We stand adjourned. Our last case is on submission. We stand adjourned.